UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN HOPE, GARY SNIDER, and JOSEPH STANDISH, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | )   1:16-cv-02865-RLY-TAB ) ) |
| COMMISSIONER OF THE INDIANA DEPARTMENT OF CORRECTION, MARION COUNTY PROSECUTOR, MARION COUNTY SHERIFF, HUNTINGTON COUNTY PROSECUTOR, HUNTINGTON COUNTY SHERIFF, ALLEN COUNTY PROSECUTOR, and ALLEN COUNTY SHERIFF, all in their official capacities, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ENTRY ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendants, the Commissioner of the Indiana Department of Correction ("DOC"), the Marion County Prosecutor, the Marion County Sheriff, the Huntington County Prosecutor, the Huntington County Sheriff, the Allen County Prosecutor, and the Allen County Sherriff, currently require Plaintiffs, Brian Hope, Gary Snider, and Joseph Standish, to register with the Indiana Sex and Violent Offender Registry. This lawsuit centers on the *reason* their registration is required. If Plaintiffs are to be believed, it is solely because they engaged in interstate travel. They contend that they must register merely because they relocated to Indiana after first residing in a different state that required their registration. If they had committed the exact same crime on the exact same

1

date in Indiana and thereafter never left the state, the DOC would not require their registration. Defendants see things differently. They maintain that Plaintiffs have overcomplicated the issue and ignored the obvious: these men must register because each of them has been convicted of a sexual offense.

Plaintiffs allege that Indiana's Sex Offender Registration Act ("SORA"), Ind. Code § 11-8-8-1 *et seq.*, as applied to them, violates (1) the Equal Protection Clause of the Fourteenth Amendment, (2) the fundamental right to travel, which is protected by the Due Process Clause of the Fourteenth Amendment, and (3) the *ex post facto* clause of the United States Constitution. They now seek preliminary injunctive relief so that they may be relieved of their registration obligation during the pendency of this suit. Defendants oppose the motion. They argue that Plaintiffs should continue registering with the Sex and Violent Offender Registry because, *inter alia*, their constitutional claims have no merit. The court disagrees, and therefore **GRANTS** Plaintiffs' motion.

## I. Background

### A. Indiana's Sex Offender Registration Act

The Indiana Sex and Violent Offender Registry is jointly maintained by the DOC and local sheriffs, *see* Ind. Code §§ 11-8-2-12.4, 11-8-2-13(b), 36-2-13-5.5, although the DOC is responsible for determining who is required to register and the length of the registration period. (Filing No. 41-1, Deposition of Brent Myers 6:10-22). A person required to register under SORA is subject to a wide variety of obligations and restrictions. He must report in person at least annually to the sheriff's office in the county where he resides in order to register and be photographed. Ind. Code § 11-8-8-14.

2

If he is employed or attends school in a different county, he must report to the sheriff's office in that county as well. Ind. Code § 11-8-8-7. However, if the person qualifies under Indiana law as a "sexually violent predator," *see* Ind. Code § 35-38-1-7.5, then he must report to the local sheriff's office every ninety days. Ind. Code § 11-8-8-14(b). If the person lives in transitional or temporary housing, or lacks a residence altogether, he must appear in person at least once every seven days. Ind. Code § 11-8-8-12.

In addition to his photograph, a person required to register must provide the following information: his full name, date of birth, sex, race, height, weight, hair color, eye color, identifying features, social security number, driver's license or state identification card number, vehicle description, license plate number, principal address, the name and address of any employer or educational institutional that he attends, any electronic mail address, any instant messaging username, any social networking web site username, and "[a]ny other information required by the [DOC]." Ind. Code § 11-8-8-8(a). Much of this information is available on the internet to the public. If any of this information changes, he must report that change in person within seventy-two hours of the change. Ind. Code § 11-8-8-8(c).

In order to verify an individual's residence, local law enforcement must contact each offender at least once per year (at least once every ninety days if the offender is a "sexually violent predator"), and must personally visit each offender at least annually (again, at least once every ninety days if the offender is a "sexually violent predator"). Ind. Code § 11-8-8-13(a). Various other obligations or restrictions are also imposed on all persons required to register as sex or violent offenders. For example, he (a) must

3

obtain and keep in his possession a valid driver's license or state-issued identification card, Ind. Code § 11-8-8-15, and (b) may not petition for a change of name under Indiana law, Ind. Code § 11-8-8-16.

On top of this, specific categories of offenders are subjected to additional restrictions. A "sexually violent predator" must inform law enforcement whenever he plans to be absent from his home for more than 72 hours. Ind. Code § 11-8-8-18. A person who qualifies as an "offender against children," Ind. Code § 35-42-4-11(a), may not work or volunteer at, or reside within 1,000 feet of, school property, a youth program center, or a public park. Ind. Code §§ 35-42-4-10(c), 35-42-4-11(c). A person who qualifies as a "serious sex offender," Ind. Code § 35-42-4-14(a), may not enter school property. Ind. Code § 35-42-4-14(b).

## B. The DOC's Policy at Issue in this Litigation

In *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009), the Indiana Supreme Court held that the *ex post facto* clause of the Indiana Constitution prohibits the application of SORA to an individual whose offense predates the enactment of the statute.[1] *Id.* at 384. In compliance with that decision, the DOC does not require registration for any individual who meets the following three conditions: (1) he was convicted of a sexual or violent offense in Indiana, (2) he committed that offense at a time when it did not require registration, and (3) he has never left the state. (Myers Dep. 17:6-19:13, 27:13-21, 31:1-23).

---

[1] "The Indiana General Assembly adopted its first version of [SORA] in July 1994." *Id.* at 374-75.

However, if a person who is not required to register because his Indiana offense predates any registration requirement relocates to another state, the DOC requires that person to register as a sex or violent offender upon returning to Indiana. (*Id.* 19:3-5, 24:13-22, 33:23-34:6). If a person who is not required to register because his Indiana offense predates any registration requirement continues to live in Indiana but commutes to a neighboring state for work (and has to register in that second state due to his employment), the DOC may require that person to register as a sex or violent offender. (*Id.* 41:10-42:8). If a person who is not required to register because his Indiana offense predates any registration requirement travels to a different state for a short vacation and has to register in that second state due to his temporary presence[2], the DOC may require that person to register as a sex or violent offender upon returning to Indiana. (*Id.* 40:14-41:9). If a person who was convicted of an offense in another state and would not have to register had he committed the same offense at the same time in Indiana because it predated any registration requirement relocates to Indiana, the DOC requires that person to register as a sex or violent offender. (*Id.* 25:9-26:8).

The result of the DOC's registration policies is that if two persons committed an identical offense at a time when this offense did not require registration under Indiana law, and one of those persons subsequently travels in interstate commerce but the other

---

[2] *See, e.g.,* Ala. Code § 15-20A-11(e)(1) (defining "residence" for registration purposes to include "[w]herever an adult sex offender resides for three or more consecutive days"); 730 Ill. Comp. Stat. 150/3(a) (requiring registration for a sex offender who "resides or is temporarily domiciled for a period of time of 3 or more days" in the state); Kan. Stat. Ann. 22-4902(j) (defining "reside" for registration purposes as any place where an offender "stays, sleeps or maintains [his] person for three or more consecutive days or parts of days").

does not, only one of these persons will now be required to register–the individual who crossed state lines.

### C. The Plaintiffs

Each of the Plaintiffs committed an offense that, at the time it was committed, did not require registration under SORA because either the law had not been enacted or the specific crime at issue had not been added as a registerable offense. After SORA was enacted and the relevant crimes had been deemed registerable offenses, each of the Plaintiffs traveled in interstate commerce.

Brian Hope's offense took place in 1993, and he was convicted of that offense in Indiana in 1996. (Filing No. 35-1, Affidavit of Brian Hope ¶ 2). His period of supervised release expired in 2000, and in 2004 he moved first to California and then to Texas. (*Id.* ¶¶ 3-4). He resided in Texas through September 2013, at which point he returned to Indiana because his grandfather became seriously ill. (*Id.* ¶ 7; Filing No. 40-1, Brian Hope's Responses to Defendants' Interrogatories at 8). Upon his return to Indiana, Hope was informed that he must register as a sex offender for the rest of his life. (Hope Aff. ¶ 7). He has continuously resided in Indiana since September 2013, and currently resides in Marion County. (Hope Interr. Responses at 7). He is homeless and has been for some time. (Hope Aff. ¶ 13).

Gary Snider's offense took place in 1988. (Filing No. 35-2, Affidavit of Gary Snider ¶ 2). He was charged with that offense in Michigan in 1994, and was subsequently convicted. (*Id.*). He was incarcerated in Michigan until July 2003. (*Id.* ¶ 3). Upon his release, Snider moved to Huntington County, Indiana, where his wife lived

because of her work. (*Id.* ¶¶ 4-5). He has resided continuously in Huntington County since that time. (*Id.* ¶ 5). Snider registered as a sex offender in Indiana upon moving, and continued doing so until he was informed in February 2010 that, in light of the *Wallace* decision, he was no longer required to register. (*Id.* ¶¶ 5-6). In August or September 2016, however, he was informed that he is required to register as a sex or violent offender for the remainder of his life. (*Id.* ¶ 7).

Joseph Standish's offense took place in February 1995, and he was convicted of that offense in Michigan in April 1996.[3] (Filing No. 35-3, Affidavit of Joseph Standish ¶ 2). He was sentenced to a short period of incarceration in the county jail followed by a term of probation; his term of probation ended in approximately 2001. (*Id.* ¶ 3). Standish registered as a sex offender while residing in Michigan. (*Id.* ¶¶ 3-4). In May 2013, Standish moved from Michigan to Allen County, Indiana because his wife obtained a job there. (*Id.* ¶ 5). He has resided continuously in Allen County since that time. (*Id.*). Standish attempted to register upon moving to Indiana, but he was informed that he was not required to do so pursuant to *Burton v. State*, 977 N.E.2d 1004 (Ind. Ct. App. 2012) (applying *Wallace*) (dismissing charges of failing to register for an offender who was convicted in Illinois of a crime that, at the time he committed it, did not require registration in either Illinois or Indiana). (*Id.* ¶ 6). In late 2015 or early 2016, he was

---

[3] Standish committed his offense after the first version of SORA was enacted in 1994, but before his specific offense was added to the list of registerable offenses. He was convicted of "attempted criminal sexual conduct" in 1995, but attempted crimes did not require registration until 2001. *See* Ind. Code § 5-2-12-4(a)(13) (2001).

7

informed that he was required to register as a sex or violent offender for the remainder of his life. (*Id.* ¶ 7).

Due to the nature of their convictions, the DOC has determined that each Plaintiff qualifies as an "offender against children" and a "serious sex offender," and that Snider and Standish also qualify as a "sexually violent predator." (Hope Aff. ¶ 14; Snider Aff. ¶ 10; Standish Aff. ¶ 10). These classifications subject the Plaintiffs to the additional restrictions and obligations described above.

## II. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). A motion for preliminary injunctive relief is analyzed in two distinct phases. *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). In the initial, threshold phase, the party seeking injunctive relief bears the burden of showing that "(1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Id.* at 661-62.

If the court determines that the moving party has satisfied its burden in the threshold phase, the court proceeds to the second, balancing phase. *Id.* at 662. The court then considers "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted" along with "(5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the 'public interest')." *Id.* In this second phase, the court uses a "sliding scale" to weigh potential harms against the

movant's likelihood of success: "the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id.*

### III. Discussion

The court considers each of the preliminary injunction prongs in turn, beginning with Plaintiffs' likelihood of success on the merits.

#### A. Likelihood of Success on the Merits

Plaintiffs allege that SORA, as applied to them, violates three distinct bodies of law: (1) the Equal Protection Clause, (2) the fundamental right to travel, which is protected by the Due Process Clause, and (3) the *ex post facto* clause. For reasons that will become clear, the court considers the first two claims together and then declines to opine on the third.

##### 1. Equal Protection and Right to Travel

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). *See Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016) ("The Equal Protection Clause generally protects people who are treated differently because of membership in a suspect class or who have been denied a fundamental right."). "Equal Protection claims are subject to different degrees of scrutiny depending on the individual rights or the class of persons at issue." *Council 31*

9

*of the Am. Fed'n of State, Cty. & Mun. Emples. v. Quinn*, 680 F.3d 875, 886 (7th Cir. 2012). "If either a suspect class or fundamental right is implicated, 'the government's justification for the regulation must satisfy the strict scrutiny test to pass muster under the Equal Protection Clause.' But if neither condition is present, the proper standard of review is rational basis." *Sweeney v. Pence*, 767 F.3d 654, 668 (7th Cir. 2014) (quoting *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009)).

Thus, in deciding whether Plaintiffs are likely to succeed on their Equal Protection claim, the "first question is whether the act targets a suspect class or addresses a fundamental right." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 637 (7th Cir. 2007). Plaintiffs allege the DOC's policies discriminate between two classes: (a) persons who commit a sex offense in Indiana before the enactment of SORA and thereafter do not leave the state, and (b) persons who commit a sex offense before the enactment of SORA and thereafter move between states. This distinction appears to implicate the right to travel, and "[t]he right to interstate travel has been recognized as fundamental by the Supreme Court." *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013). *See e.g., Saenz v. Roe*, 526 U.S. 489, 498 (1999) ("The word 'travel' is not found in the text of the Constitution. Yet the constitutional right to travel from one State to another is firmly embedded in our jurisprudence.") (some quotation marks omitted); *Shapiro v. Thompson*, 394 U.S. 618, 638 (1969) (discussing "the fundamental right of interstate movement").

This right to travel "embraces at least three different components": (a) "[i]t protects the right of a citizen of one State to enter and to leave another State"; (b) it

10

protects "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State"; and (c) "for those travelers who elect to become permanent residents," it protects "the right to be treated like other citizens of that State." *Saenz*, 526 U.S. at 500. Plaintiffs rely on the third component–the right of newly arrived residents to be treated similarly to other residents of Indiana.

### i. Whether the Right to Travel is Implicated

The court finds that this component of the right to travel is implicated. Plaintiffs have been subjected to differential treatment due exclusively to the fact that they migrated between states. In the cases of both Snider and Standish, registration requirements have been imposed because they relocated to Indiana only after they had registered for a period of time in Michigan. And in the case of Hope, these requirements have been imposed because he chose to reside in Texas for a period of time rather than consistently remain a resident of Indiana.

Defendants insist that registration requirements have been imposed on Plaintiffs not because of their interstate migration but because of the crimes they committed. From their perspective, Hope was able to benefit from the *Wallace* decision during his Indiana residency, but he voluntarily left the state in 2004. He later returned in 2013 having been convicted of a registerable offense back in 1996. He was on notice that his offense required registration in Indiana, but he nonetheless made the choice to return. He is therefore in no position to complain that forcing him to register is unfair. Hope availed himself of the benefits of an Indiana residence in 2013, so he must abide by the laws in

11

effect at that time. He cannot demand that Defendants enforce the laws as they existed in the 1990s.

For Snider and Standish, Defendants point to a subsection of SORA that they refer to as the "substantially equivalent" provision. Pursuant to this subsection, a person convicted of an out-of-state offense that is "substantially equivalent" to an Indiana registerable offense must register under SORA. Ind. Code §§ 11-8-8-4.5(a)(21), 11-8-8-5(a)(23). Both men committed crimes that are substantially equivalent to Indiana registerable offenses, and they were on notice of this provision when they chose to relocate.

Defendants posit that, while Plaintiffs may not frame it in this way, their Complaint is actually a narrow challenge to SORA's "other jurisdiction" provision. Pursuant to that subsection, "[A] person who is required to register as a sex or violent offender in any jurisdiction" must register under SORA. Ind. Code § 11-8-8-5(b)(1). *See* Ind. Code §§ 11-8-8-4.5(b)(1). This means that a person who resides in Michigan and is required to register there must register in Indiana if he decides to relocate. The "other jurisdiction" provision is relevant to this case–it provides a second reason Hope and Standish must register. However, it does not apply to Snider because he moved to Indiana before it was enacted. Defendants' overall argument is that there is an independent source of each Plaintiff's registration requirement wholly apart from the "other jurisdiction" provision. Accordingly, this case is a "non-justiciable red herring." (Filing No. 37 at 2).

12

Unfortunately, Defendants appear to have missed the point. They fail to address the core problem in this case, which is this: if any of the Plaintiffs had committed their offenses in Indiana and thereafter not left the state, the DOC would not require that they register as sex or violent offenders because of the Indiana Supreme Court's decision in *Wallace*. However, because the Plaintiffs have each relocated to Indiana from another jurisdiction, the DOC requires that they now register.

Defendants also contend there can be no violation of an individual's right to travel if he is not subject to any additional burdens that did not already exist in his prior state of residence. In this case, each Plaintiff had been required to register as a sex or violent offender in a different state. Thus, Indiana did not impose a *new* burden on them when they crossed the state line. Defendants assert that the DOC's registration policies could not possibly act as a deterrent to or penalty for moving to Indiana. Yet, the Supreme Court has expressly rejected the notion that a person must be deterred in his interstate travel in order for his fundamental rights to be implicated. In *Saenz*, the Court explained that it was not "concerned solely with actual deterrence to migration." 526 U.S. at 504. Rather, because "the right to travel embraces the citizen's right to be treated equally in her new State of residence, the discriminatory classification is itself a penalty." *Id.* at 504-05.

When the Plaintiffs arrived in Indiana they were not afforded the same status as persons who had resided in Indiana all along. As a result of the DOC's policies, long-term Indiana residents who have never travelled out of state are treated differently than new Indiana residents. This differential treatment offends the fundamental right to travel.

13

### ii. Whether SORA Survives Strict Scrutiny Review

Plaintiffs advance distinct claims under the Equal Protection Clause and the Due Process Clause, but, in this case, the analysis for those claims converge. Because Plaintiffs have invoked a fundamental right as part of their Equal Protection claim, strict scrutiny is the proper standard for that claim. Similarly, their Due Process Clause challenge, which stems from an allegation that a fundamental right was violated, requires an application of strict scrutiny review. *See Doe v. Heck*, 327 F.3d 492, 519 (7th Cir. 2003) ("It is well established that when a fundamental constitutional right is at stake, courts are to employ the exacting strict scrutiny test."). The issue, therefore, is whether SORA, as applied to Plaintiffs, withstands strict scrutiny review.

To survive strict scrutiny, the government must show that the law is necessary to serve a compelling state interest and is narrowly tailored to achieve that interest. *Midwest Fence Corp. v. United States DOT*, 840 F.3d 932, 941 (7th Cir. 2016). "Though there is no exact definition of a compelling interest, it is one 'of the highest order' and is only found in 'rare cases.' For example, the [Supreme] Court has found compelling interests in the tax system, social security system, and national security and public safety." *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 745 (7th Cir. 2015) (quoting *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993)) (citations omitted). Narrow tailoring requires "a close match between the evil against which the remedy is directed and the terms of the remedy." *Builders Ass'n of Greater Chi. v. Cty. of Cook*, 256 F.3d 642, 646 (7th Cir. 2001).

The only interest proposed by Defendants is one in preventing Indiana from "becoming a sanctuary destination for sex offenders from around the entire country." (Filing No. 37 at 19). Assuming, *arguendo*, that this qualifies as a compelling state interest, SORA is not narrowly tailored to achieve that interest because it is vastly overinclusive.

The DOC's registration policies apply regardless of the individual's purpose for choosing Indiana as his destination. Defendants do not distinguish between offenders relocating to Indiana to find a "safe haven" and those coming to the Hoosier state because of ill family members, like Hope. Both are required to register just the same. Additionally, an Indiana resident who is not required to register because his Indiana offense predates any registration requirement might be required to register if he begins commuting to a neighboring state for work or travels to a different state for a short vacation. Defendants' proposed justification–preventing persons from relocating to Indiana in order to avoid registration requirements–has absolutely no applicability to these individuals. SORA is therefore overbroad with respect to this interest.

Whereas SORA is not narrowly tailored to achieve a compelling state interest, it fails to pass constitutional muster. Plaintiffs have a strong likelihood of success on the merits of their Equal Protection and right-to-travel claims.

### 2. *Ex Post Facto*

The court need not reach Plaintiffs' *ex-post facto* claim because they are likely to succeed on their other claims. Therefore, the court expresses no opinion on their likelihood of success on this claim.

### B. Irreparable Harm

To satisfy the "irreparable harm" prong, the moving party must show that the denial of preliminary injunctive relief "will cause harm to him that a final judgment will not be able to rectify." *Ill. League of Advocates for the Developmentally Disabled v. Ill. Dep't of Human Servs.*, 803 F.3d 872, 876 (7th Cir. 2015). It is well established that "[t]he existence of a continuing constitutional violation constitutes proof of an irreparable harm." *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978). *See Campbell v. Miller*, 373 F.3d 834, 840 (7th Cir. 2004) (Williams, J., dissenting) ("Campbell can establish the irreparable harm element by demonstrating a violation of his constitutional rights."). Because Plaintiffs are likely to succeed on their constitutional challenges, they have satisfied the irreparable harm prong.[4]

### C. Adequate Remedy at Law

Money damages are an adequate remedy for some constitutional violations. *See id.* at 835 (in the context of a Fourth Amendment unreasonable search claim, cautioning against the assumption that money damages can never be an adequate remedy for a constitutional wrong). But in this case, Plaintiffs maintain that the infringement of their constitutional rights cannot be compensated by damages. Defendants do not dispute this,

---

[4] As part of their argument under this prong, Defendants posit that the purpose of a preliminary injunction is to maintain the status quo. Because Plaintiffs seek to alter the status quo, their motion should purportedly be denied. The Seventh Circuit recently rejected this same argument: "The State's Attorney argues that a preliminary injunction is inappropriate here because it would grant the ACLU affirmative relief rather than preserving the status quo. The Supreme Court has long since foreclosed this argument." *ACLU v. Alvarez*, 679 F.3d 583, 590 n.1 (7th Cir. 2012) (citing *Ashcroft v. ACLU*, 542 U.S. 656, 670 (2004)).

16

thereby conceding the argument. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Plaintiffs have therefore satisfied this prong.

### D. Balancing Phase

Again, the court uses a "sliding scale" when balancing the harms and the public interest. *Turnell*, 796 F.3d at 662. Because the court has found that Plaintiffs have a high likelihood of success on their equal protection and right-to-travel claims, the court must issue an injunction even if the balance of harms does not overwhelmingly weigh in their favor. *Id.* "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Stuller, Inc. v. Steak N Shake Enters.*, 695 F.3d 676, 678 (7th Cir. 2012) (internal citations and quotation marks omitted). "Stated another way, the district court 'sit[s] as would a chancellor in equity' and weighs all the factors, 'seeking at all times to minimize the costs of being mistaken.'" *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)) (alteration original) (some quotation marks omitted).

Plaintiffs will continue to suffer the irreparable harm discussed above if injunctive relief is denied. Defendants do not argue that they will be harmed if injunctive relief is granted, and nor could they. An injunction would merely require Defendants to comply with the U.S. Constitution, which they cannot claim is harmful. *See Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004) (in the context of a First Amendment claim, concluding "there can be no irreparable harm to a municipality when it is

prevented from enforcing an unconstitutional statute"); *Mich. Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 698 (W.D. Mich. 2010) ("[N]either the Secretary of State's office nor the State of Michigan will suffer any harm by merely being required to obey the Constitution as interpreted by the Supreme Court."); *Grutter v. Bollinger*, 137 F. Supp. 2d 874, 878 (E.D. Mich. 2001) ("Defendants are not irreparably harmed by an injunction that requires them to comply with the Constitution.").

Defendants' only argument for the balancing phase is that the public has a strong interest in ensuring these men remain on the registry. They assert that SORA was enacted to protect the public, and allowing the public to have access to each Plaintiff's registry listing is profoundly important. Yet, the court cannot permit the government to maintain an unconstitutional policy simply to ensure public safety.

Moreover, it is well established that the vindication of constitutional rights serves the public interest. *See Alvarez*, 679 F.3d at 590 (in the context of a First Amendment claim, concluding, "the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional"); *Preston*, 589 F.2d at 303 n.3 ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest."). *Accord Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010) ("When a constitutional violation is likely, moreover, the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights.") (quotation marks omitted).

The balance therefore weighs in favor of granting injunctive relief.

### E. Summary

Having satisfied all of the elements set forth in *Turnell*, Plaintiffs' motion for a preliminary injunction shall be granted.

### F. Bond

According to Rule 65(c), "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Notwithstanding the plain language of the rule, the Seventh Circuit has explained that a district court may "waive the requirement of an injunction bond" when "the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr. v. United States Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010). Put simply, "[t]here is no reason to require a bond in such a case." *Id.*

In this case, the court is satisfied that Defendants will not suffer any damages if an injunction is ordered. They make no argument to the contrary. Accordingly, Plaintiffs shall not be required to post a bond.

## IV. Conclusion

Therefore, Plaintiffs' Renewed Motion for Preliminary Injunction (Filing No. 14) is **GRANTED**.

The Commissioner of the Indiana Department of Correction, as well as his officers, agents, servants, employees, and attorneys, is hereby **PRELIMINARILY ENJOINED** from enforcing the Indiana Sex Offender Registration Act, Ind. Code § 11-

8-8-1, *et seq.*, against Plaintiffs, or from requiring their registration as sex or violent offenders in any manner.

The Sheriffs of Marion County, Huntington County, and Allen County, as well as their officers, agents, servants, employees, and attorneys, are hereby **PRELIMINARILY ENJOINED** from enforcing the Indiana Sex Offender Registration Act, Ind. Code § 11-8-8-1, *et seq.*, against Plaintiffs, or from taking any other action against Plaintiffs as a result of their failure to register as sex or violent offenders.

The Prosecutors of Marion County, Huntington County, and Allen County, as well as their officers, agents, servants, employees, and attorneys, are hereby **PRELIMINARILY ENJOINED** from taking any action against Plaintiffs as a result of their failure to register as sex or violent offenders.

**SO ORDERED** this 6th day of April 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.